CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
JUL 23 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ARIN CHRISTOPHER HAHN, | ) | Civil Action No. 7:13-cv-00592 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C/O MICHAEL, | ) | By:   Hon. Jackson L. Kiser |
|     Defendant. | ) |        Senior United States District Judge |

Plaintiff Arin Christopher Hahn, a Virginia inmate proceeding pro se, filed a verified civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff named the Northwest Regional Adult Detention Center ("Jail") and Jail Corrections Officer ("C/O") Benjamin Michael as defendants, and presently before me is C/O Michael's motion for summary judgment, to which Plaintiff responded.[1] After reviewing the record, I grant C/O Michael's motion for summary judgment.

I.

Plaintiff alleges the following relevant facts about C/O Michael in the verified Complaint. "On November 1, [2013], I was assaulted by C/O Michael[] in the basement of the [Frederick County] Courthouse. He asked me to step out of [the] cell [and] then pushed me back in and threw me to the ground. I was looked at by the nurse and she confirmed [that] my left cheek bone is fractured due to [C/O] Michael[] actions."

In support of the motion for summary judgment, C/O Michael filed his affidavit, the affidavits of two other officers who were present during the incident, and an affidavit of a nurse at the Jail. Their evidence reveals the following facts.

C/Os Michael and Stewart were in the basement of the Frederick County Courthouse on November 1, 2013, with Frederick County Sheriff's Deputy John Piccione to transfer Plaintiff between the Jail and the Courthouse. Plaintiff began banging on his cell door and complaining

---

[1] I dismissed the claims against the Jail and terminated the Jail as a defendant by an earlier order.

how he had been at the courthouse all day and wanted to go back to the Jail. Deputy Piccione opened the cell door and told inmate Plaintiff that the paperwork was not ready yet and Plaintiff needed to sit down. Plaintiff yelled back, "You need to do your job and go get my paperwork now! I have been here since first thing this morning." Deputy Piccione explained how he had no control over the paperwork and that Plaintiff had to wait. Officer Michael also said, "[I]t wouldn't be any faster if [Plaintiff] went in to the courtroom and got them himself."[2] Michael Aff. ¶ 4.

Plaintiff walked out of the cell, and Officer Michael pushed him back and followed him inside the cell. Plaintiff was chest to chest with Officer Michael and clenched his fists, which were not restrained in handcuffs. To both Officer Michael and Deputy Piccione, Plaintiff appeared to be preparing to assault Officer Michael and/or flee the cell. Officer Michael grabbed Plaintiff and lowered Plaintiff to the floor to apply handcuffs. Plaintiff refused orders to offer his hands for restraints, and Officer Michael struck Plaintiff's upper left thigh and left shoulder. The officers ultimately restrained Plaintiff in handcuffs and placed him a separate cell.

C/O Michael denies striking Plaintiff in the face at any time. Plaintiff's face may have contacted the floor when Officer Michael lowered Plaintiff to the floor but not with enough force to cause any injury. There was no visible injury to Plaintiff's face, and Plaintiff did not file a request for treatment while at the courthouse or upon returning to the Jail. Plaintiff first complained of lower-left orbital pain on December 19, 2013, despite being previously seen in the Jail's medical department on December 15, 2013. An X-ray and a CT scan showed that no fracture occurred.

---

[2] Plaintiff alleges in his unverified response that Officer Michael asked, "Do you want to go get your paperwork from the Clerk yourself?" to which Plaintiff replied, "Yes."

2

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986) (footnote omitted). Plaintiff's response to the motion for summary judgment consists of an unverified narrative of events and argument. See, e.g., Pine Ridge Coal Co. v. Local 8377, UMW. 187 F.3d 415, 422 (4th Cir. 1999) (noting a party opposing a motion for summary judgment has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (noting a verified complaint containing allegations based on personal knowledge is the equivalent of an affidavit opposing summary judgment). A court may not resolve disputed

facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

As a pretrial detainee, Plaintiff's excessive force claim is governed by the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008). To prevail on his Fourteenth Amendment excessive force claim, Plaintiff must satisfy the same legal standard that a sentenced prisoner must satisfy under the Eighth Amendment: whether an official's actions were objectively harmful enough to establish cruel and unusual punishment, and whether the official acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991); Simms v. Bruce, 104 F. App'x 853, 857 (4th Cir. 2004). Essentially, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response show. Id. at 321; see, e.g., Wilkins v. Gaddy, 559 U.S. 34 (2010). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 38.

Based on the record before me, the evidence establishes that C/O Michael reasonably perceived Plaintiff's actions as a threat to security or officer safety. Officer Michael prevented

4

Plaintiff from leaving the cell with unrestrained hands, entered the cell to restrain Plaintiff, and determined Plaintiff, who had clenched his fists, presented a real, immediate threat to the officers and public safety. In order to maintain control, C/O Michael placed Plaintiff on the ground, Plaintiff continued to physically resist attempts to secure him, and C/O Michael struck Plaintiff's thigh and shoulder to induce compliance. Notwithstanding Plaintiff's unsupported belief that his cheek was fractured during this incident, the X-ray and CT scan conclusively confirm that Plaintiff's cheek was not fractured. Furthermore, Officer Michael did not strike Plaintiff in the face, and the fall to the floor did not inflict any constitutionally-significant injury. Accordingly, the record taken as a whole shows that the force applied by C/O Michael was in a good-faith effort to maintain or restore discipline and not maliciously and sadistically for the very purpose of causing harm, and no rational trier of fact could find for Plaintiff. See id.

## IV.

For the foregoing reasons, I grant C/O Michael's motion for summary judgment.

**ENTER**: This 23d day of July, 2014.

Senior United States District Judge

5

Case 7:13-cv-00592-JLK-RSB   Document 34   Filed 07/23/14   Page 5 of 5   Pageid#: 132